IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:13-CT-3065-FL

| JOHN MCLEAN, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| MARVIN D. CASINO,[1] ROBERT OWENS, PAULA SMITH, TERRI CATLETT, and DR. J. NATHANIEL HAMILTON, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

The matter comes before the court on defendants' respective motions to dismiss (DE 32, 49, 56) pursuant to Federal Rule of Civil Procedure 12(b)(6), which were fully briefed. In this posture, the issues raised are ripe for adjudication. For the following reasons, the court grants defendants' respective motions and declines to exercise supplemental jurisdiction over plaintiff's state law claims.

**STATEMENT OF THE CASE**

On March 22, 2013, plaintiff, a state inmate, filed this civil rights action *pro se* pursuant to 42 U.S.C. § 1983, against defendants Marvin D. Casino ("Casino"), Terri Catlett ("Catlett"), Dr. Robert Owens ("Owens"), and Paula Smith ("Smith"). Plaintiff also initially brought this action against an "unknown medical surgeon," which plaintiff later identified as Dr. J. Nathaniel Hamilton

---

[1] Plaintiff identified this defendant as Frank Casino in his complaint. This defendant has informed the court that his correct name is Marvin D. Casino. The Clerk of Court is DIRECTED to amend the caption in this case to reflect such change.

("Hamilton").² Plaintiff alleges that defendants acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment to the United States Constitution.

On January 7, 2014, Owens filed a motion to dismiss pursuant to Rule 12(b)(6), arguing that plaintiff failed to state a claim upon which relief may be granted. Defendants Casino, Catlett, and Smith subsequently filed a motion to dismiss pursuant to Rule 12(b)(6) on April 1, 2014, and Hamilton filed his Rule 12(b)(6) motion to dismiss on May 8, 2014. Defendants Hamilton and Owens also raised the affirmative defense of qualified immunity. Plaintiff did not respond to Owens' motion to dismiss, but the remaining motions to dismiss were fully briefed.

### STATEMENT OF FACTS

Viewing the facts in the light most favorable to plaintiff, the allegations in the complaint may be summarized as follows.³ Plaintiff suffers from "a severe bladder infection/chronic illness [] and has for quite sometime been wheelchair bound from these bouts." (Mem. in Supp. of Compl. p. 3.) After months of "extreme pain, sufferings and chronic treatments by Maury [Correctional Institution ("Maury")] Staff Defendants, [plaintiff] was finally scheduled for surgery." (Id.)

Plaintiff had surgery in December 2012 and was "denied adequate after care treatment" and subsequently "filed official grievances." (Id.) In his first grievance, dated December 19, 2012, plaintiff stated that he was released from the hospital and returned to Maury without an adequate recovery time. (Id. Ex. A.) Plaintiff further stated that he was placed on two types of "serious pain pills" and was "never informed of exactly what type of surgery or after care was/is required." (Id.)

---

² Plaintiff first identified the unknown medical surgeon as Dr. Henry Moyle (DE 9), but ultimately determined that the identity of the unknown medical surgeon is Hamilton.

³ Copies of some of plaintiff's grievances, grievance responses, and sick call requests are attached to plaintiff's complaint. Plaintiff does not dispute the authenticity of the documents. A court may consider documents attached to a plaintiff's complaint in ruling upon a motion to dismiss or motion for judgment on the pleadings where, as here, the materials are integral to the complaint and authentic. See Philips v. Pitt County Memorial Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (stating that in ruling on a Rule 12(b)(6) motion to dismiss, the court may consider documents attached to the motion and the complaint if they are "integral to the complaint and authentic").

Plaintiff stated he was in pain and unable to "use the restroom normally." (Id.) Plaintiff asked that he "be evaluated, receive examination and hospital [] after care packet information . . . ." (Id.) Plaintiff further requested "access to a medical Dr. [and] Access to Records of FACTS regarding 'What' actual procedures took place." (Id.) Prison officials responded to plaintiff's grievance as follows:

> An investigation at Maury Correctional Institution #4875, including review of a statement received from V. DeVera, RN Lead Nurse reveals that upon discharge from hospital on 12/8/12, inmate was admitted to this facility's infirmary housing where direct nursing care was available to him 24 hours/7 days. He was evaluated by the house provider on the next available day, which was 12/10/12 and he was prescribed narcotic pain, medication as needed. After he was deemed stable, he was sent back to the unit and the pain medication was still available to him until the order and prescription ran out and he was referred back to the provider for renewal. He was scheduled for a follow-up with the outside clinic to which he went on 1/7/13. He is scheduled for another appointment in the next three months. Per Medical Records Policy, inmate may not be given a copy of his medical records, but he has access to medical staff who may clarify any concerns to him.

(Id. Ex. B.)

On December 24, 2012, plaintiff submitted a sick call request form stating the following: "I would like to know what I'm supposed to eat on a regular basis. [D]ue to my operation & what exactly was done to me (the procedure I just had) I need explanation." (Id. Ex. C.) In response, medical staff stated: "The procedure done was to remove a section of your prostate that was blocking urine flow. These is no change done to your diet as of this time." (Id.)

Plaintiff filed a second grievance on December 31, 2012, complaining that he continued to have pain, but had only three pain pills left. (Id. Ex. D.) Prison staff provided the following response:

> V. DeVera, RN Lead Nurse reveals that after coming from the hospital, [petitioner] was prescribed a narcotic pain medication.

> After 3 days, inmate continues to complain of pain, so the house provider increased the dosage to his current pain medication. After 3 more days, and inmate becoming more stable, the inmate was discharged back to the unit and his pain medication was decreased. The day before the order expired, on December 23, 2012, nursing staff referred [plaintiff] to the on-call provider who renewed the medication for 2 more weeks, but just to use existing supply. Even before the order expired, and because inmate was constantly requesting for the pain medication, the supply ran out and Central Pharmacy will not fill the prescription without a new order. This was then referred back to the provider on 1/3/13 who felt that after almost a month of the inmate undergoing surgical procedure, [plaintiff's] wound should be healing and he should not be needing as much pain medication as he was getting, thus, the provider did not renew the narcotic pain medication, instead put him on Acetaminophen. Inmate had follow-up with Eastern Urological on 1/7/13 and will have another follow-up in 3 months.

(Id. Exs. E, F.)

Plaintiff states that "the doctor whom performed the surgery . . . stole his manhood," that he can no longer attain an erection or produce sperm after his surgery, and that he no longer has the ability to have children. (Id. pp. 4-5, 12.) (emphasis removed) Plaintiff complains that these side effects were not disclosed to him prior to his surgery and that he "continues to suffer in pain, he is exclusively suffering mentally & emotionally from the loss of his stolen manhood." (Id. p. 7.) (emphasis removed).

## DISCUSSION

A.     Standard of Review

A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-pled

facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, this plausibility standard requires a plaintiff to articulate facts, that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quotations omitted).

B.  Analysis

    a.  Owens and Hamilton

Defendants Owens and Hamilton raise the defense of qualified immunity in this § 1983 action. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009). The court first determines whether plaintiff alleged an Eighth Amendment violation.

"In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'" Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir.1993) (quoting Williams v. Griffin, 952 F.2d 820, 824 (4th Cir.1991)). The Supreme Court has explained that the first prong is an objective one–the prisoner must show that "the deprivation of [a] basic human need was objectively 'sufficiently serious,'"–and the second

prong is subjective—the prisoner must show that "subjectively 'the officials act[ed] with a sufficiently culpable state of mind." Strickler, 989 F.2d at 1379 (quotations omitted). Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement. See Hudson v. McMillian, 503 U.S. 1, 9 (1992). In order to demonstrate such an extreme deprivation, a prisoner "must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions," Strickler, 989 F.2d at 1381, or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions. See Helling v. McKinney, 509 U.S. 25, 33–35 (1993).

In their respective motions to dismiss, Hamilton and Owens focus on the subjective prong of the Eighth Amendment test–whether they acted with deliberate indifference. Deliberate indifference "sets a particularly high bar to recovery." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). "In order to establish a claim of deliberate indifference to a medical need, the need must be both apparent and serious, and the denial must be both deliberate and without legitimate penological objective." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999). "[D]eliberate indifference entails something more than negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." See Farmer v. Brennan, 511 U.S. 825, 835 (1994). It requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm. Id. at 837; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995). An inmate is not entitled to choose his course of treatment. See Russell v. Sheffer, 528 F.2d 318, 318-19 (4th Cir. 1975) (per curiam). Likewise, mere negligence or malpractice in diagnosis or treatment does not state a constitutional claim. Estelle v. Gamble, 429 U.S. 97, 105-106 (1976); Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998).

Plaintiff's claims relate to medical care provided during the following three separate time periods: (1) the pre-operative period; (2) the prostate surgery; and (3) the post-operative care. Plaintiff alleges claims relating to each of these time periods, and the court will address these claims in turn.

Beginning with plaintiff's Eighth Amendment claim regarding plaintiff's pre-operative treatment, plaintiff states that he suffered a bladder infection, unspecified "chronic illnesses," and pain. (Mem. in Supp. of Compl. p. 3.) Plaintiff also states that defendants "allowed" an unspecified infection to "set in." (Id. p. 11.) Plaintiff, however, does not allege that defendants Owens or Hamilton ever refused to address his complaints of pain or refused to see plaintiff during the pre-operative period. Rather, plaintiff admits that he was receiving "chronic treatments" for his condition during the pre-operative period. (Id. p. 3.) Thus, plaintiff failed to satisfy the subjective prong of the Eighth Amendment test because plaintiff failed to allege that Owens or Hamilton knew of and disregarded any objectively serious condition, medical need, or risk of harm. Farmer, 511 U.S. at 837.

Turning to plaintiff's claims relating to his prostate surgery, plaintiff alleges that defendants did not tell plaintiff what specific surgery was performed and did not inform plaintiff that one of the potential risks of surgery included the inability to attain an erection or to produce sperm.[4] Claims, such as plaintiff's, asserting issues of informed consent are claims which sound in negligence, and are not sufficient to state an Eighth Amendment claim. See Fishback v. Department of Public Safety and Correctional Services, No. JFM-07-1883, 2008 WL 7730383, at *1, n.5 (D. Md. Sept. 17, 2008), aff'd 325 F. App'x 188 (4th Cir. 2009); Pabon v. Wright, 459 F.3d 241, 250 (2nd Cir. 2006)

---

[4] Notably, plaintiff, in this case, does not allege that the surgery was not necessary or that the surgery did not help address his urinary retention issue.

("[I]nadvertent failures to impart medical information cannot form the basis of a constitutional violation."); Hutchinson v. Razdan, No. 11-20159-Civ-COHN, 2013 WL 811882, at *7 (S.D. Fla. Jan. 29, 2013) ("A claim regarding lack of informed consent without more is one of medical negligence, not deliberate indifference and . . . negligent conduct . . . does not rise to the level of a constitutional violation."); see also Nelson v. Patrick, 58 N.C. App. 546, 548-49 (1982). Finally, the fact that defendants' treatment was not effective does not give rise to a constitutional violation. See e.g., Russell, 528 F.2d at 319. Thus, plaintiff fails to state an Eighth Amendment claim relating to his prostate surgery.[5]

As for plaintiff's complaints regarding his post-operative treatment, plaintiff again fails to state an Eighth Amendment claim. According to plaintiff's complaint and attachments, upon plaintiff's discharge from the hospital, plaintiff was prescribed narcotic pain medication for nearly one month and provided acetaminophen thereafter. (Mem. in Supp. of Compl. Exs. A, B, D, E, F.)[6] When a physician determined that plaintiff no longer required narcotic pain medication, plaintiff's pain medication was changed to Acetaminophen. (Id. Ex. E, F.) Plaintiff's filings also indicate that plaintiff was provided post-surgical follow up medical care. (Id. Exs. B-F.)

Plaintiff's repeated requests for narcotic pain medication amount to nothing more than a disagreement over the proper course of treatment. See e.g., Russell, 528 F.2d at 319. It is well settled that such a disagreement does not constitute an Eighth Amendment claim. See id. Additionally, as stated, plaintiff's complaint that defendants' efforts in diagnosing and treating plaintiff's medical needs were not effective does not give rise to a constitutional violation. See Williams v. Branker, 462 F. App'x 348, 354 (4th Cir. 2012) ("Williams points to no authority for

---

[5] The court notes that plaintiff does not allege that defendant Owens played any role in plaintiff's prostate surgery.

[6] The documents relied upon include copies of grievance responses from prison staff. Plaintiff attached these grievance responses to his complaint and does not dispute the authenticity of the statements made therein.

the proposition that the Eighth Amendment entitles him to 'effective' treatment."); see e.g., Russell, 528 F.2d at 319. At most, these defendants' conduct could be construed as negligence, which is not sufficient to state a constitutional violation. See Estelle, 429 U.S. at 105-106. Thus, plaintiff failed to state an Eighth Amendment claim in relation to his post-surgical care.[7] Because plaintiff failed to state an Eighth Amendment claim, the court finds that Hamilton and Owens are entitled to qualified immunity.

b. Defendants Casino, Smith, and Catlett

Plaintiff alleges that defendants Casino, Smith, and Catlett failed to answer his complaints or phone calls regarding alleged inadequate medical care. Because plaintiff does not set forth any additional factual allegations describing any direct contact between plaintiff and defendants Casino, Smith, or Catlett in relation to plaintiff's medical care, the court construes plaintiff's claim against these defendants as one pursuant to a theory of supervisor liability.

Supervisors in a § 1983 action may not be held liable based upon a theory of *respondeat superior*. Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009); Monell v. Dep't of Social Services, 436 U.S. 658, 694 (1978). Instead, "liability ultimately is determined 'by pinpointing the persons in the decision making chain whose deliberate indifference permitted the constitutional abuses to continue unchecked.'" Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (quoting Slakan v. Porter, 737 F.2d 368, 372-73 (4th Cir. 1984)). To establish supervisor liability under § 1983, a plaintiff must establish:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a

---

[7] The court notes that plaintiff does not allege that Hamilton was ever made aware of or consulted regarding plaintiff's complaints relating to his alleged post-surgical complications. Nor does plaintiff allege that Hamilton ever refused to provide treatment to plaintiff after the December 2012 surgery for plaintiff's alleged post-surgical complications. Thus, as an alternative grounds for dismissal, plaintiff failed to allege that Hamilton knew of and disregarded any objectively serious condition, medical need, or risk of harm. Farmer, 511 U.S. at 837.

> pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff;
>
> (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and
>
> (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw, 13 F.3d at 799.

Here, plaintiff attached grievances to his complaint which were related to the issues raised in this action. The record reflects that the North Carolina Department of Public Safety ("DPS") staff thoroughly reviewed and responded to plaintiff's complaints. (Compl. Exs. A, B, D-G.) As part of prison officials' investigation, prison staff contacted DPS medical staff who reviewed plaintiff's complaints and responded to plaintiff. (Id. Exs. B, E, F.) As was done in this case, prison officials are entitled to rely on the medical judgments and expertise of prison physicians and medical personnel concerning the course of treatment deemed necessary for prisoners. See Shakka, 71 F.3d at 167 (citation omitted); Meloy v. Bachmeier, 302 F.3d 845, 849 (8th Cir. 2002) ("Prison officials cannot substitute their judgment for a medical professional's prescription.").

Plaintiff, additionally, does not allege that Casino, Smith, and Catlett had actual or constructive knowledge that any subordinate was engaged in conduct that posed a pervasive and unreasonable risk of injury. Nor has plaintiff alleged any causal link between these defendants' alleged actions and plaintiff's alleged injury. See Slakan, 737 F.2d at 372-73. Plaintiff further has not presented any evidence to show that the response to his complaints was so inadequate to demonstrate deliberate indifference. Rather, at most, the record reflects a disagreement as to plaintiff's medical treatment, which is not sufficient to establish a constitutional violation. See

Wright, 766 F.2d at 849. Thus, the court finds that plaintiff failed to state a claim against Casino, Smith, and Catlett.

   c. Supplemental Jurisdiction

Plaintiff alleges several negligence-related state law claims. A district court may decline to exercise supplemental jurisdiction over a claim if the district court dismisses all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3); see Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995). The court has dismissed plaintiff's § 1983 claims, which were the sole claims over which it had original jurisdiction. In the interest of judicial economy, fairness, and comity, the court will not exercise supplemental jurisdiction over plaintiff's state law negligence claims. Thus, plaintiff's state law negligence claims are dismissed without prejudice.[8]

## CONCLUSION

Based upon the foregoing, defendants' respective motions to dismiss (DE 32, 49, 56) are GRANTED. Plaintiff's state law negligence claims are DISMISSED without prejudice. The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 3rd day of September, 2014.

_____
LOUISE W. FLANAGAN
United States District Judge

---

[8] Pursuant to 28 U.S.C. § 1367(d), the state statute of limitations period shall be tolled for a period of at least thirty (30) days after dismissal. Estate of Manook v. Research Triangle Inst., Int'l, No. 5:10-CV-72-D, 2010 WL 3199874, *5 (E.D.N.C. Aug. 12, 2010); Coleman v. Smith, No. 3:08-3675-JFA, 2010 WL 569662, *4 n.3 (D.S.C. Feb. 11, 2010); Futick v. Mills, No. 4:08-1749-CMC-TER, 2008 WL 5378266, at *1 (D.S.C. Dec. 24, 2008); but see, Katema v. Midwest Stamping Co., 180 F. App'x 427, 428 (4th Cir. 2006) (finding supplemental jurisdiction warranted under § 1367 where state law claims would be time-barred in state court and where court had diversity jurisdiction).